**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DAMON CAMPAGNA, LILY ROSE SMITH, and PATRICK SPAULDING, | ) ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| BOSTON RED SOX BASEBALL CLUB, | ) | Case No. 1:26-cv-10182-NMG |
| L.P. and FENWAY SPORTS GROUP | ) | |
| HOLDINGS, LLC, | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION OR TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................................... 6

I.      PLAINTIFFS' CLAIMS ARE SUBJECT TO THE ARBITRATION
        AGREEMENTS IN THE TERMS OF USE ......................................................... 6

        A.      All Claims Are Subject to Arbitration. ................................................... 7

                1.      Plaintiffs are Bound to the Arbitration Agreements in the Terms of
                        Use. ............................................................................................. 7

                2.      Plaintiffs' Claims Are Within the Scope of the Arbitration
                        Provisions ................................................................................. 10

                3.      The Red Sox Can Compel Arbitration ....................................... 12

II.     PLAINTIFFS FAIL TO STATE A CONSUMER PROTECTION CLAIM .................. 16

        A.      Plaintiffs Were Not Deceived. ............................................................. 17

        B.      Plaintiffs Do Not Plausibly Allege Harm. ........................................... 17

III.    FENWAY SPORTS GROUP HOLDINGS SHOULD BE DISMISSED. ...................... 19

CONCLUSION ................................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**                                                                          **Pages**

*Air-Con, Inc. v. Daikin Applied Latin Am., LLC*,
   21 F.4th 168 (1st Cir. 2021)..................................................................................2, 6

*Aspinall v. Philip Morris Cos.*,
   442 Mass. 381 (2004) ..............................................................................................17

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)..................................................................................................10

*Barrios-Contreras v. Big Fish Ent. LLC*,
   2026 WL 621576 (S.D.N.Y. Mar. 5, 2026) ............................................................12

*Bekele v. Lyft, Inc.*,
   199 F. Supp. 3d 284, 295-96 (D. Mass. 2016).........................................................10

*Castillo v. Altice USA, Inc.*,
   2023 WL 8650270 (S.D.N.Y. Dec. 14, 2023) .........................................................13

*CR Assocs. L.P. v. Sparefoot, Inc.*,
   2018 WL 988056 (D. Mass. Feb. 20, 2018) ..............................................................9

*Crean ex rel. Crean v. Morgan Stanley Smith Barney*,
   *LLC*, 652 F. Supp. 3d 171 (D. Mass. 2023)...............................................................6

*Desarrolladora La Ribera v. Anderson*,
   2024 WL 5186600 (S.D.N.Y. Dec. 20, 2024) ........................................................13

*Doe v. Trump Corp.*,
   6 F.4th 400 (2d Cir. 2021) .......................................................................................14

*Edson Teles Machado v. System4 LLC*,
   471 Mass. 204 (2015) ..............................................................................................13

*First Option of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)....................................................................................................7

*First Sealord Sur., Inc. v. TLT Constr. Corp.*,
   765 F. Supp. 2d 66 (D. Mass. 2010) ........................................................................10

*Gerszberg v. Li & Fung (Trading) Ltd.*,
   215 F. Supp. 3d 282 (S.D.N.Y. 2016)......................................................................13

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                                     **Pages**

*Good v. Uber Techs., Inc.*,
 494 Mass. 116 (2024) ...............................................................................................8, 9

*Gottlieb v. Amica Mut. Ins. Co.*,
 57 F.4th 1 (1st Cir. 2022)...............................................................................................16

*Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*,
 445 Mass. 790 (2006) .....................................................................................................18

*In re A2P SMS Antitrust Litig.*,
 972 F. Supp. 2d 465 (S.D.N.Y. 2013).............................................................................13

*InterGen N.V. v. Grina*,
 344 F.3d 134 (1st Cir. 2003).......................................................................................7, 14

*Kauders v. Uber Techs., Inc.*,
 486 Mass. 557 (2021) ..........................................................................................7, 8, 9, 10

*Kern v. StubHub, Inc.*,
 2024 WL 5283923 (S.D.N.Y. Dec. 17, 2024) ................................................................10

*Korn v. Simplilearn Ams. Inc.*,
 2026 WL 472984 (D. Mass. Feb. 19, 2026) .....................................................................9

*Laccinole v. Gulf Coast Collection Bureau, Inc.*,
 2023 WL 157719 (D.R.I. Jan. 11, 2023) .........................................................................17

*Laccinole v. Twin Oaks Software Dev., Inc.*,
 2014 WL 2440400 (D.R.I. May 30, 2014) .................................................................18, 19

*Milliken & Co. v. Duro Textiles, LLC*,
 451 Mass. 547 (2008) .....................................................................................................17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)........................................................................................................6, 10

*Nat'l Fed'n of Blind v. Container Store, Inc.*,
 904 F.3d 70 (1st Cir. 2018)..............................................................................................15

*Pershouse v. L.L. Bean, Inc.*,
 368 F. Supp. 3d 185 (D. Mass. 2019) .........................................................................18, 19

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                                                                **Pages**

*Presti v. Toyota Motor Sales U.S.A., Inc.,*
  2018 WL 792035 (D. Mass. Feb. 8, 2018) ...................................................................18, 19

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,*
  991 F.2d 42 (2d Cir. 1993)...........................................................................................10

*R.G. Fin Corp. v. Vergara-Nunez,*
  446 F.3d 178 (1st Cir. 2006)........................................................................................16

*Ragone v. Atl. Video at Manhattan Ctr.,*
  595 F.3d 115 (2d Cir. 2010).........................................................................................14

*Sablosky v. Edward S. Gordon Co.,*
  73 N.Y.2d 133 (1989) ..................................................................................................15

*Shaulis v. Nordstrom, Inc.,*
  865 F.3d 1 (1st Cir. 2017).......................................................................................18, 19

*Shepherd v. Belkin Int'l, Inc.,*
  683 F. Supp. 3d 282 (E.D.N.Y. 2023) .........................................................................14

*Small Just. LLC v. Xcentric Ventures LLC,*
  99 F. Supp. 3d 190 (D. Mass. 2015), *amended by* 2015 WL 5737135 (D.
  Mass. Sept. 30, 2015), *aff'd,* 873 F.3d 313 (1st Cir. 2017) ........................................7

*Sokol Holdings, Inc. v. BMB Munai, Inc.,*
  542 F.3d 354 (2d Cir. 2008).........................................................................................14

*State v. Philip Morris Inc.,*
  8 N.Y.3d 574 (2007) ....................................................................................................10

*Tomasella v. Nestle USA, Inc.,*
  962 F.3d 60 (1st Cir. 2020)..........................................................................................16

*Toth v. Everly Well, Inc.,*
  118 F.4th 403 (1st Cir. 2024)..........................................................................................8

*Watkins v. Musk,*
  786 F. Supp. 3d 337 (D. Mass. 2025) ..........................................................................13

iv

**TABLE OF AUTHORITIES**
(continued)

**Cases** **Pages**

*Wellesley Hills Realty Tr. v. Mobil Oil Corp.*,
　747 F. Supp. 93 (D. Mass. 1990) ..............................................................................17

*Wickberg v. Lyft, Inc.*,
　356 F. Supp. 3d 179 (D. Mass. 2018) ......................................................................7, 8

*Zamani v. SharkNinja, Inc.*,
　2025 BL 235536 (D. Mass. July 7, 2025)................................................................17

**STATUTES**

9 U.S.C. § 2......................................................................................................................6

9 U.S.C. § 4......................................................................................................................2

Federal Arbitration Act ....................................................................................................2

Mass. Gen. Laws, ch. 93A ................................................................................16, 17, 18, 19

6 R.I. GEN. LAWS ANN. § 6-13-1 et seq. ......................................................................16

**RULES**

Fed. R. Civ. P. 12...................................................................................................16, 17

## INTRODUCTION

Two things are true of each of Plaintiffs' Red Sox ticket purchases. First, before buying, each Plaintiff knew the exact total price and paid only the disclosed amount. Second, each Plaintiff affirmatively assented, by clicking a box marked "**I agree to the following**," to the Terms of Use for the Red Sox Website or MLB Ballpark App. Each of these facts are undisputed and dispositive. Because the Terms include a mandatory arbitration clause that applies to this dispute, even if the Complaint stated a claim, that claim must be arbitrated pursuant to those Terms. And because Plaintiffs knew the total price before completing the transaction, they were not deceived or harmed by the ticket purchase flow alleged in the Complaint. Finally, at a minimum, Fenway Sports Group Holdings LLC should be dismissed because it had no role in any of the alleged injuries.

The Court should therefore order Plaintiffs to arbitrate their claims as they agreed to do, or dismiss the entire case with prejudice.

## FACTUAL BACKGROUND

Boston Red Sox Baseball Club, L.P. ("Red Sox") is a Massachusetts limited partnership that does business as the Boston Red Sox, one of thirty professional teams that make up Major League Baseball ("MLB"). (Complaint, Docket No. 1, ¶ 13) ("Compl."). MLB is an unincorporated association comprised of the Major League Baseball Clubs. MLB Advanced Media, L.P. ("MLBAM"), a related business entity, owns and controls MLB's website, www.mlb.com, and the MLB Ballpark Application ("Ballpark App"), which allows fans to use their smartphones to purchase, store, and access tickets to events at Fenway Park. (Declaration of Laura Pitaro Wisch, filed herewith ("Wisch Decl."), at ¶ 7; Declaration of Ron Bumgarner, filed herewith ("Bumgarner Decl.")), at ¶ 11. The Red Sox own a 3.33% indirect interest in MLBAM. Wisch Decl. ¶ 4.

1

The Red Sox sell tickets to baseball games and other events through their Official Website ("Red Sox Website"), which exists only as a subpage of www.mlb.com. Compl. ¶ 60; Wisch Decl. ¶ 6. From and after at least January 1, 2022, it was the Red Sox general policy that all tickets purchased online for Red Sox games and other sporting events at Fenway Park required attendees to use electronic tickets on the Ballpark App Bumgarner Decl. ¶ 19. Each of the named Plaintiffs used the Ballpark App to enter Fenway Park during the proposed class period. *Id.* ¶¶ 25-27.

Fenway Sports Group Holdings LLC ("FSGH") is a Delaware limited liability company. FSGH does not advertise or sell tickets, nor is it the parent company of the Red Sox. Plaintiffs allege no specific action by FSGH and do not claim to have purchased tickets from FSGH.

**MLB Terms of Use**

MLBAM owns and manages the Red Sox Website and Ballpark App through which Plaintiffs bought their tickets. Compl. ¶¶ 112, 119, 122. All ticket buyers must agree to the MLB.com Terms of Use ("Terms") to purchase tickets online.[1] The Terms were disclosed to Plaintiffs as follows:

- The Red Sox Website has included, since at least February 4, 2020, a link to the Terms. Bumgarner Decl. ¶ 9.

- Users who set up MLB.com accounts or use those accounts to log into the Ballpark App must agree to the Terms before using the App. *Id.* ¶¶ 20-23.

- When a consumer purchases tickets on the Red Sox Website or the Ballpark App, the consumer must click a box confirming "I agree to the following" to both the MLB Terms, which govern the purchase among other things, and the Red Sox

---

[1] The Federal Arbitration Act contemplates "the submission and consideration of evidentiary materials—including materials beyond those attached to the pleadings—in support of and opposition to a motion to compel arbitration." *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021); 9 U.S.C. § 4.

Terms and Conditions (including a broad release from liability), which govern the use of the ticket (i.e., attendance at the Park). *Id.* ¶¶ 14-16; Compl. ¶ 75 (emphasis omitted).

There are two versions of the Terms relevant here. The 2020 Terms were in effect from February 4, 2020 through February 5, 2024, and the 2024 Terms were in effect from February 6, 2024 until March 11, 2025.[2]

Both sets of Terms warn consumers, in bold, that "**By using an MLB Digital Property, you agree to be bound by this Agreement. If you do not agree to this Agreement, do not use the MLB Digital Properties**." Bumgarner Decl. Ex. A § 1; Ex. B § 1 (similar). The 2020 Terms state, "**[u]se of the Official Websites of Major League Baseball, which encompasses MLB.com, the Official Websites of the thirty (30) Major League Baseball Clubs [and]. . . downloadable mobile applications (e.g., At Bat, Ballpark) . . . are subject to this Agreement**." *Id.*, Ex. A § 1 (emphasis in original). The 2024 Terms similarly state, "**[u]se of the Official Website of Major League Baseball, which encompasses MLB.com, the Official Websites of the thirty (30) Major League Baseball Clubs, [and] . . . downloadable mobile applications (e.g., MLB, Ballpark) . . . are subject to this Agreement**." *Id.*, Ex. B § 1 (emphasis in original).

**Arbitration Provisions**

The 2020 Terms include a mandatory arbitration provision identified on the first page in the table of contents as "ARBITRATION; CONSENT TO JURISDICTION IN NEW YORK; ATTORNEYS' FEES; TIME PERIOD LIMITATION FOR CLAIMS." *Id.*, Ex. A at 1 (emphasis omitted). The 2020 Terms arbitration provision applies to "[a]ny and all disputes, claims or

---

[2] For purposes relevant here, the Terms effective March 12, 2025 are the same as the 2024 Terms and are not separately discussed.

3

controversies arising out of or relating to this Agreement, the breach thereof, or any use of," among other sites, the Red Sox Website. *Id.,* Ex. A §§ 11.1. Ticket buyers also waive their right to a jury trial, waive their right to collective action, agree to arbitrate, and agree that New York law applies. *Id.* Ex. A §§ 11.1,12.

The 2024 Terms likewise include a mandatory arbitration provision identified in the table of contents as, "DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER; JURY TRIAL WAIVER)." *Id.,* Ex. B at 1 (emphasis omitted). The 2024 Terms disclose, in Section 1, that: "This Agreement contains a Dispute Resolution section, including an arbitration agreement, class action waiver, and jury trial waiver that affect your legal rights." *Id.* § 1. Ticket buyers were advised to "[p]lease review these provisions carefully." *Id.* Section 11 further warns consumers to "[p]lease read this section carefully. It affects your legal rights." *Id.*, Ex. B § 11 (emphasis omitted). And Section 11 identifies the Red Sox as a party to the arbitration provision. *Id.* ("For purposes of this Section 11, and unless stated otherwise, all references to 'MLB' incorporate and apply to any 'MLB Entity' as defined in Section 9." (emphasis omitted)); *Id.*, Ex. B § 9 ("For purposes of this Agreement, the 'MLB Entities' shall mean MLB . . . the Major League Baseball Clubs ('MLB Clubs') . . . ."). The arbitration provision applies to "[a]ny dispute or claim arising out of or relating to this Agreement, or your use of any MLB Digital Property . . ." *Id.*, Ex. B § 11.1. The 2024 Terms also require users to waive any right to collective action, to arbitrate, and to agree to apply New York law. *Id.*, Ex. B §§ 11.1, 12.

**Ticket Purchase Flow**

The Complaint alleges that the Red Sox advertise and sell tickets "through, among other channels, their official website (https://mlb.com/redsox)" and the "MLB Ballpark mobile application." Compl. ¶¶ 60, 68. Both are MLB Digital Properties under the 2020 Terms and the

4

2024 Terms. Bumgarner Decl. Ex. A § 1;  Ex. B § 1. Before beginning a transaction, Plaintiffs, like all other users, assented to the Terms simply by using the Red Sox Website. *Id*., Ex. A §§ 1, 14; Ex. B §§ 1, 14.

Before completing a purchase, every customer was shown the ticket price and all applicable fees; the Complaint does not allege that Plaintiffs, or any other customers, were ever charged fees that were not disclosed before purchase. Plaintiffs allege that during the relevant time period, it was deceptive for the Red Sox not to disclose the total cost inclusive of applicable fees in the first instance that the ticket price appeared on the Red Sox Website. Compl. ¶¶ 62-63; 83. After picking a ticket on either the website or the app, customers advanced to a screen showing ticket prices and related fees, including "Per Ticket" and "Order" fees. *Id*. ¶¶ 64, 84. Customers had the option to enter their personal information, accept the Terms, and proceed to payment <u>only after</u> the total cost was displayed. Customers always had the option to return to an earlier screen showing all available tickets. All customers who purchased tickets, including Plaintiffs, had to enter their payment information and confirm their agreement to the Terms before completing the transaction. *Id.* ¶ 75.

**Plaintiffs Agreed to the Terms of Use**

As reflected in the screenshot of the Red Sox Website in the Complaint, ticket buyers had to accept the Terms and the Red Sox Terms and Conditions in order to buy tickets through the Red Sox Website or the Ballpark App. Compl. ¶ 75; *see* Bumgarner Decl. ¶¶ 14, 24. Customers manifested this consent by clicking the "I agree to the following" box. Compl. ¶ 75 (emphasis omitted). The Terms appear immediately below the box in hyperlinked blue text. *Id.* Each Plaintiff purchased tickets through the Red Sox's online channels. *Id*. ¶¶ 7, 119, 122; Baumgarner Decl. ¶¶

25-27. In fact, Plaintiffs Spaulding and Smith purchased tickets on multiple occasions, including multiple occasions before the start of the class period. Bumgarner Decl. ¶¶ 25-26.

Plaintiffs similarly accepted the Terms every time they logged into the Ballpark App. All three Named Plaintiffs used the Ballpark App, as Red Sox records show that they each used the app to enter Fenway Park at least once. *Id.* ¶¶ 25-27. When a user accesses the Ballpark App, they are prompted to sign in to their MLB.com accounts or set up an account. *Id.* ¶ 20. The screen displays, "By logging in, I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." *Id.* ¶ 21. A user cannot access the contents of their MLB.com account, including any tickets held, without logging in. *Id*. ¶ 23; Wisch Decl. ¶ 7.

<strong>ARGUMENT</strong>

The Complaint should be dismissed and Plaintiffs ordered to submit to arbitration. Alternatively, the Complaint should be dismissed because on the undisputed facts, Plaintiffs fail to allege that they suffered any deception or cognizable injury.

**I.      PLAINTIFFS' CLAIMS ARE SUBJECT TO THE ARBITRATION AGREEMENTS IN THE TERMS OF USE.**

Courts enforce arbitration agreements based on the "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); 9 U.S.C. § 2. Arbitrability should be decided summarily based on admissible evidence, including evidence outside the pleadings. *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174-75 (1st Cir. 2021); *Crean ex rel. Crean v. Morgan Stanley Smith Barney, LLC*, 652 F. Supp. 3d 171, 175-76 (D. Mass. 2023).

By purchasing tickets from the Red Sox online, or by setting up an MLB.com account which is required to access the Ballpark App, Plaintiffs agreed to the Terms, which require individual arbitration of these claims.

### A.    All Claims Are Subject to Arbitration.

The Red Sox satisfy all the conditions for compelling arbitration because, on the face of the Terms that Plaintiffs accepted, (1) a valid agreement to arbitrate exists, (2) the Red Sox are entitled to invoke the arbitration clause, (3) Plaintiffs are bound by that clause, and (4) the claims asserted come within the clause's scope. *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003).

### 1.    Plaintiffs are Bound to the Arbitration Agreements in the Terms of Use.

Plaintiffs agreed to arbitrate when they accepted the Terms while purchasing tickets from the Red Sox Website or the Ballpark App, among other instances. This Court applies Massachusetts contract formation principles to the arbitration agreement. *See First Option of Chi., Inc.  v. Kaplan*, 514 U.S. 938, 944 (1995). Massachusetts courts determining if an online contract, often called a "clickwrap agreement," was formed apply a two-prong test, "focusing on whether there is reasonable notice of the terms and a reasonable manifestation of assent to those terms." *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 572 (2021). "Clickwrap" agreements are online agreements requiring users to signal their consent by affirmatively clicking a checkbox. *Id.* at 574. Agreements like the ones Plaintiffs entered are enforceable "because they require affirmative action on the part of the user." *Small Just. LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 196 (D. Mass. 2015), *amended by* 2015 WL 5737135 (D. Mass. Sept. 30, 2015), *aff'd*, 873 F.3d 313 (1st Cir. 2017); *see also, e.g., Wickberg v. Lyft, Inc.,* 356 F. Supp. 3d 179, 183 (D. Mass. 2018) ("[C]lickwrap agreements . . . are generally held enforceable."). To create a valid agreement, the user must be put "on notice that the user is entering a contractual agreement," and the agreement must require manifestation of assent. *Kauders,* 486 Mass. at 574-75. One way to meet the assent second prong

7

is to "[r]equire[ ] an expressly affirmative act." *Id*. The Red Sox Website's and the Ballpark App's presentation of the Terms easily satisfy both prongs.

Whether consumers purchase tickets through the Red Sox Website or the Ballpark App, they encounter a similar purchase flow, subject to their agreement to the same Terms. Compl. ¶ 69. This is so because when customers purchase tickets through the Ballpark App, the Ballpark App launches a version of the website within the app.[3] The Terms appeared in hyperlinked blue text below the checkbox users were required to click before completing their purchase. Bumgarner Decl. ¶ 14. Massachusetts courts consider the "language used to notify the user of the terms, the prominence with which the hyperlink . . . was displayed" as well as the "clarity and extensiveness of the process to access the terms . . . ." *Good v. Uber Techs., Inc.*, 494 Mass. 116, 130 (2024). The test is objective: whether, under the totality of the circumstances, the communication would provide notice of the terms to a reasonably prudent user. *See id.*

Courts considering disclosures similar to those provided through the Red Sox Website and Ballpark App routinely conclude that users received adequate notice. In *Toth*, the First Circuit held that users had notice of terms and that the defendant had "secured meaningful assent" in a clickwrap agreement when the terms and conditions were hyperlinked in green font and next to a "checkbox that users must click before creating an account." *Toth v. Everly Well, Inc.*, 118 F.4th 403, 412 (1st Cir. 2024). Similarly, in *Wickberg*, the arbitration provision in a clickwrap agreement was sufficiently conspicuous because the pink hyperlink to the terms was "distinguishable on the screen" despite the fact that it appeared "towards the bottom in a smaller font and without a typical blue-colored hyperlink." *Wickberg*, 356 F. Supp. 3d at 183-84 (holding that a user had

---

[3] Ballpark App accounts registered to Campagna, Smith, and Spaulding were created, activated, and used for entry into Fenway. Bumgarner Decl. ¶¶ 25-27. Users must agree to the Terms when they first set up an account on the Ballpark App, and again each time they log into the App. *Id*. ¶¶ 20-23

"affirmatively adopted" the terms when he clicked a box indicating his agreement to hyperlinked terms that were placed next to the box). Here, the terms appeared in hyperlinked blue font, providing users ample notice of the terms. *See Korn v. Simplilearn Ams. Inc.*, 2026 WL 472984, at *2 (D. Mass. Feb. 19, 2026) (blue underlined hyperlinks "help[] ensure that a reasonable user has notice of the option to click into the hyperlink for a more detailed explanation."); *CR Assocs. L.P. v. Sparefoot, Inc.*, 2018 WL 988056, at *4, n.4 (D. Mass. Feb. 20, 2018) ("Hyperlinks [in clickwrap agreements] are commonly blue and underlined."); *Good,* 494 Mass. at 130 (courts consider the prominence of hyperlinks in evaluating notice).

In addition, the arbitration clause itself is conspicuously disclosed. At the top of the 2020 Terms, on the front page, is a table of contents pointing users to Section 11 entitled "**ARBITRATION; CONSENT TO JURISDICTION IN NEW YORK; ATTORNEYS' FEES; TIME PERIOD LIMITATION FOR CLAIMS.**" Bumgarner Decl. Ex. A, at 1  (emphasis in original). The 2024 Terms Table of Contents contain substantially the same disclosure: "**DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER; JURY TRIAL WAIVER)**." Bumgarner Decl. Ex. B, at 1 (emphasis in original). The 2024 Terms also include, in Section 1, an unequivocal disclosure that they contain "a Dispute Resolution section, including an arbitration agreement, class action waiver, and jury trial waiver that affect your legal rights. In arbitration, there is less discovery and appellate review than in court. Please review these provisions carefully." *Id*. § 1.

Second, Plaintiffs gave the "clearest manifestations of assent" when they clicked a checkbox labelled "I agree to the following" on the ticket purchase page. *Kauders*, 486 Mass. at 574 Compl. ¶ 75. In *Kauders*, the SJC stated that agreements requiring users to affirmatively click a checkbox are "regularly enforced." 486 Mass. at 574.  This includes clickwrap agreements

9

containing arbitration provisions. *See Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 295-96 (D. Mass. 2016) ("Massachusetts courts have routinely concluded that clickwrap agreements—whether they contain arbitration provisions or other contractual terms—provide users with reasonable communication of an agreement's terms.").

### 2.     Plaintiffs' Claims Are Within the Scope of the Arbitration Provisions.

Although state contract law applies to the question of contract formation, the scope of an arbitration clause is governed by federal law. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45, 48 (2d Cir. 1993). Under that law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. The presumption in favor of arbitration is particularly strong with broad arbitration clauses like these. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Kern v. StubHub, Inc.,* 2024 WL 5283923, at *4 (S.D.N.Y. Dec. 17, 2024) ("[T]he arbitration clause, which covers 'any and all disputes or claims' arising out of Plaintiffs' use of or access to StubHub's services, or any tickets sold or purchased through StubHub, 'is the paradigm of a broad clause,' giving rise to a presumption of arbitrability." (citation modified)); *First Sealord Sur., Inc. v. TLT Constr. Corp.*, 765 F. Supp. 2d 66, 72 (D. Mass. 2010) ("A broad clause creates a presumption of arbitrability that is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (citation modified).

Courts recognize that the use of "expansive words" such as "any" and "relating to" "makes explicit that all claims that have a connection with [the agreement] are arbitrable." *State v. Philip Morris Inc.*, 8 N.Y.3d 574, 580 (2007); *First Sealord Sur.,* 765 F. Supp. at 73 ("The reference . . . to '*any* controversy, claim or dispute *involving* subcontractor' makes the clause broader rather than narrower. Indeed, the clause is broad enough such that the presumption of 'arbitrability' is applicable.")(emphasis in original). Both clauses here are broad and cover this dispute.

The 2020 Terms arbitration clause applies to the use of any "MLB Digital Property," which includes the Red Sox Website and the Ballpark App. Bumgarner Decl., Ex. A § 1. And the arbitration clause applies to "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the MLB Digital Properties (including all commercial transactions conducted through the MLB Digital Properties) . . . ." *Id.* § 11.1

The 2024 Terms are similarly broad and require "[a]ny dispute or claim arising out of or relating to this Agreement, or your use of any MLB Digital Property (including all commercial transactions conducted through the MLB Digital Properties)" to be resolved through binding individual arbitration. Bumgarner Decl. Ex. B § 11.1 (emphasis added). Digital Properties are defined to include "[r]eferences to this Website" and the "Ballpark" app. *Id.* § 1. The 2024 Terms define disputes to include "(i) any dispute or claim that arose before the existence of this or any prior Agreement (including, but not limited to, claims relating to advertising)." *Id.*, § 11.1.

Plaintiffs seek to represent "[a]ll persons who purchased tickets from the Red Sox between January 16, 2022 and the present, and in connection with such purchases paid additional fees that the Red Sox did not include within their initial price advertisements." Compl. ¶¶ 128-29. Plaintiffs' allegations apply only to online ticket purchases. *Id.* ¶ 112 ("Mr. Campagna evaluated the different ticket options available through the Red Sox's online ticketing channels . . ."); *Id.* ¶ 119 (referring to "checkout page" of website); *Id.* ¶ 122 (same). Plaintiffs further allege that the Red Sox, starting with the 2022 season, stated they would no longer sell tickets at the Fenway Park box office. *Id.* ¶ 101.

Accepting these allegations, all putative class members purchased their tickets online and their claims must be arbitrated. Plaintiffs purchased their tickets only after affirmatively agreeing to the Terms. Because Plaintiffs' claims arise directly from their use of the Red Sox Website and

11

their online ticket purchases—commercial transactions conducted through MLB Digital Properties—their claims fall squarely within the broad scope of both the 2020 and 2024 arbitration provisions, which have applied at all relevant times.

### 3. The Red Sox Can Compel Arbitration.

#### a. The Red Sox Are a Party or Third-Party Beneficiary of the Terms.

The Red Sox sell tickets online through the Red Sox Website and Ballpark App, and benefit from the Terms applicable to those fora as MLB Digital Properties. If the Red Sox are a proper defendant here because they engaged in allegedly actionable conduct through the Red Sox Website or the Ballpark App, then they must be a party that can invoke the arbitration clauses in the 2020 or 2024 Terms; this dispute clearly arises exclusively from Plaintiffs' use of an MLB Digital Property—the Red Sox Website or Ballpark App.

The Red Sox are an "MLB Entity" under both the 2020 and 2024 Terms. Bumgarner Decl. Ex. A § 9, Ex. B § 9. The 2020 Terms state that for the purpose the Agreement, "MLB Entities" includes, "MLB, the Office of the Commissioner of Baseball [and]. . . the Major League Baseball Clubs." *Id.*, Ex. A § 9 (emphasis omitted). The 2024 Terms state that "all references to 'MLB' incorporate and apply to any 'MLB Entity' as defined in Section 9." *Id.*, Ex. B § 11. In Section 9, "MLB Entities" is defined as including "the Major League Baseball Clubs ('MLB Clubs')." *Id.* § 9. The Red Sox can obviously enforce the arbitration provision. *Barrios-Contreras v. Big Fish Ent. LLC*, 2026 WL 621576, at *4 (S.D.N.Y. Mar. 5, 2026) (affiliates of signatory are entitled to compel arbitration provision which covered "affiliates").

In the alternative, the Red Sox can compel arbitration under the Terms as a third-party beneficiary, an issue left to New York law under the Terms. *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 288 (S.D.N.Y. 2016) ("It is settled that an arbitration agreement may be enforced in favor of third-party beneficiaries."); *Castillo v. Altice USA, Inc.*, 2023 WL 8650270, at

*5 (S.D.N.Y. Dec. 14, 2023) (quoting *Gerszberg*); *see Watkins v. Musk*, 786 F. Supp. 3d 337, 350-51 (D. Mass. 2025) (arbitration provision governing disputes with affiliates covered dispute with company CEO as a third-party beneficiary).

### b.   Plaintiffs are Estopped from Objecting to Arbitration.

Even if the court concludes that the Red Sox are not a party or may not enforce the arbitration agreement as a third party beneficiary, this is a paradigmatic case where the court should compel arbitration by applying equitable estoppel. Equitable estoppel requires (i) the claims must "arise under the subject matter of the underlying agreement," and (ii) there must be "a close relationship between the signatory and the non-signatory party." *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476, 478 (S.D.N.Y. 2013) (citation modified).[4] The Red Sox meet this test with ease.

The first prong is "effectively the same question as whether the claims against the non-signatory fall within the scope of the underlying arbitration clauses." *Desarrolladora La Ribera v. Anderson*, 2024 WL 5186600, at *14 (S.D.N.Y. Dec. 20, 2024) (citation modified). Here, Plaintiffs' claims arise exclusively from their use of MLB Digital Properties (Compl. ¶¶ 101, 119, 122, 128-29) and are clearly within the scope of the arbitration provision. *See* Bumgarner Decl., Ex. A § 11, Ex. B § 11. Under the second prong, the close relationship between MLBAM and the Red Sox, particularly with respect to the operation of the website from which Plaintiffs bought tickets, means Plaintiffs "should be estopped from denying [their] obligation to arbitrate" with the Red Sox. *Doe v. Trump Corp.*, 6 F.4th 400, 412-13 (2d Cir. 2021); *see Shepherd v. Belkin Int'l, Inc.*, 683 F. Supp. 3d 282, 287 (E.D.N.Y. 2023) (applying doctrine to corporate relationship). And the Plaintiffs here knew the Red Sox would be instrumental to their purchase of Red Sox tickets from the Red Sox

---

[4] The Terms require application of New York law, but the same result obtains under Massachusetts law. *See Edson Teles Machado v. System4 LLC*, 471 Mass. 204, 209-11 (2015).

through the Red Sox Website or the Ballpark App. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 128 (2d Cir. 2010). It would be bizarre and unfair for Plaintiffs to avoid arbitration on the ground that the Red Sox are not an express party to the contract that governs and facilitates the purchases on which the Complaint is founded. *See Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008).

In sum, the Red Sox satisfy all conditions for compelling arbitration:  (1) a valid agreement to arbitrate exists; (2) the Red Sox are entitled to invoke the arbitration clause; (3) Plaintiffs are bound by that clause; and (4) the claims asserted come within the clause's scope. *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003).

### c.    The Court Should Not Follow the D.C. Superior Court.

The Superior Court for the District of Columbia erred in addressing a similar issue in *National Consumers League v. Washington Nationals Baseball Club LLC*, slip op. at 15 (D.C. Super. Ct. Sept. 16, 2025). This Court is not bound by, and should not follow, the *NCL* decision, which is on appeal.

As an initial matter, much of that decision turned on the identity of the plaintiff, the National Consumers League ("NCL") suing in a representative capacity, and a provision of the District of Columbia's consumer protection law that includes a special provision for representative suits by groups like the NCL. *Id.* at 8. In particular, the court found that the scope of the arbitration clause did not cover the NCL's suit in a representative capacity because the clause only applied to suits relating to tickets purchased brought by the ticketholders themselves, not to representative consumer groups. *Id.* at 6-7. Plaintiffs here sue on their own behalf, rendering the rationale of *NCL* inapplicable.

The D.C. Superior Court also ignored the reality of the ticket purchase process, and the close relationship between the Nationals and MLBAM. The court found that the Nationals and

14

MLBAM were not sufficiently related for equitable estoppel to apply. *Id.* at 13. Not so. MLBAM is a limited partnership jointly owned by the thirty MLB Clubs, including the Nationals and the Red Sox, the same entities that partially comprise the unincorporated association of MLB. *See* Wisch Decl. ¶ 4. MLBAM was initially created to centralize the Internet and interactive-media operations of MLB and its Clubs, and it continues to manage those operations, among other things. *Id*. ¶ 5.  Plaintiffs' Complaint confirms this. It is replete with allegations that they purchased tickets from the Red Sox through the Red Sox page on the MLB.com website, which MLBAM operates, or the Ballpark App, which MLBAM owns. *Id*. ¶¶ 6-7. Plaintiffs knew that the Red Sox Website only existed as a subpage of the larger MLB website and knew of the strong connection between the Red Sox and MLBAM. *See* Compl. ¶¶ 7, 8, 9, 60, 69-78, 111-14, 116-20, 122, 128.

The D.C. Superior Court also placed undue weight on its erroneous conclusion that the club could not be compelled to arbitration. *See NCL*, slip op. at 14-15. But, under New York law (which governs the Terms), mutuality of obligation is not required to enforce an arbitration provision. *Sablosky v. Edward S. Gordon Co*., 73 N.Y.2d 133, 137 (1989); *see also Nat'l Fed'n of Blind v. Container Store, Inc.*, 904 F.3d 70, 81 n.14 (1st Cir. 2018) (("Broad arbitration agreements have been found to cover challenges [including] lack of mutuality, . . . .") (quoting 7 Philip L. Bruner & Patrick J. O'Connor, *Construction Law* § 21:73 (2018) (collecting cases)). Even if the Red Sox are not *bound* to arbitrate claims they initiate, they may still *compel* arbitration of claims brought against them.

In any event, the breadth of the arbitration clause leads to the opposite conclusion—the Red Sox could be compelled to arbitrate disputes arising from their sale of tickets through the Red Sox Website and the Ballpark App because the arbitration provision covers all disputes related to

15

the subject matter regardless of who is the initial claimant. Given the factual differences between the cases, and the court's legal errors, this Court should disregard the D.C. Superior Court's conclusion.

## II.   PLAINTIFFS FAIL TO STATE A CONSUMER PROTECTION CLAIM.

Even accepting all of Plaintiffs' well-plead allegations as true, they do not state a claim that is plausible on its face because they do not allege an injury. *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 70 (1st Cir. 2020). On a Rule 12(b)(6) motion, the court may consider materials outside of the pleadings that are fairly incorporated therein, like the pages of the Red Sox Website and the Ballpark App, that Plaintiffs did not include in their complaint. *R.G. Fin Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006) ("The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice.").

To adequately plead a claim under the Massachusetts Consumer Protection Act, Chapter 93A, Plaintiffs "must show '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.'" *Gottlieb v. Amica Mut. Ins. Co.*, 57 F.4th 1, 10 (1st Cir. 2022) (quoting *Tomasella*, 962 F.3d at 71).

Likewise, under Rhode Island's Deceptive Trade Practice Act ("DTPA") 6 R.I. GEN. LAWS ANN. § 6-13-1 et seq., "a consumer must allege (1) that he was the subject of a deceptive practice or act in connection with the purchase of a service; and (2) that he suffered an ascertainable loss of money or property as a result of the deceptive practice." *Laccinole v. Gulf Coast Collection Bureau, Inc.*, 2023 WL 157719, at *4 (D.R.I. Jan. 11, 2023) (citation modified).

Plaintiffs fail to plausibly allege a claim under Chapter 93A or DPTA because they failed as a matter of law to adequately plead deception and the Complaint itself demonstrates they were not harmed.

16

### A.    PLAINTIFFS WERE NOT DECEIVED.

The boundaries of what qualifies as a deceptive act for purposes of Chapter 93A is a question of law. *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (2008). Conduct is deceptive "if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394 (2004) (citation modified). Plaintiffs do not allege that fees that are fully disclosed before consummating purchase would cause a reasonable consumer to act differently than if those fees were disclosed a short time earlier. *Zamani v. SharkNinja, Inc.*, 2025 BL 235536, at *4 (D. Mass. July 7, 2025) ("Plaintiff's contention that Defendants deceptively omitted information . . . is belied by his Complaint . . . , which establish[es] that Defendants had repeatedly disclosed [the allegedly omitted information] on the Amazon webpage where Plaintiff purchased the Product."); *Wellesley Hills Realty Tr. v. Mobil Oil Corp.*, 747 F. Supp. 93, 103 (D. Mass. 1990) (dismissing 93A claim under Rule 12(b)(6) where, "[d]espite its conclusory allegation parroting the language of Chapter 93A, [plaintiff] has not alleged any facts showing" deceptive behavior). Although in this case the questions of harm and deception are intertwined because no Plaintiff purchased tickets without knowing their full price, inclusive of fees, the lack of deceptive conduct is by itself sufficient to require dismissal. Further, both Spaulding and Smith purchased tickets before the class period began, confirming that they were already aware of the Red Sox ticket flow, including the inclusion of applicable fees, and could not have been deceived when they encountered them again during the class period. Bumgarner Decl. ¶¶ 25-26.

### B.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE HARM.

Both Massachusetts's Chapter 93A and Rhode Island's DPTA require Plaintiffs to allege an injury apart from the alleged deceptive conduct. *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 191 (D. Mass. 2019) (Chapter 93A) (citing *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 11 (1st Cir.

17

2017) ("The flaw in Shaulis's theory of injury… is that it merges the alleged deception with the injury")); *Laccinole v. Twin Oaks Software Dev., Inc.*, 2014 WL 2440400, at *12 (D.R.I. May 30, 2014) (dismissing DTPA claim where plaintiff "was unable to articulate any way in which he had experienced any actual damage of any sort.").

Plaintiffs do not complain about the value of the tickets they purchased. They instead claim to have suffered "substantial economic injury . . . because they paid more than the advertised or initially quoted prices due to late-disclosed mandatory fees and increased total prices." Compl. ¶ 149. But that framing obscures the legally relevant fact: Plaintiffs got exactly what they paid for—the tickets they picked for the price that was fully disclosed before they completed the transaction. *Id.* ¶¶ 74-75. In *Shaulis*, the First Circuit affirmed dismissal of a 93A claim for deceptive pricing because the complaint "fail[ed] to identify anything objective that Shaulis bargained for that she did not, in fact, receive." 865 F.3d at 12; *see also Presti v. Toyota Motor Sales U.S.A., Inc.*, 2018 WL 792035, at *3 (D. Mass. Feb. 8, 2018) (dismissing complaint where plaintiff "has provided no 'objectively identifiable' basis to allege that he did not receive exactly what he paid for." (quoting *Shaulis*)).

In *Hershenow*, the Supreme Judicial Court confirmed that a plaintiff suffers no injury when the alleged deceptive practice did not make a consumer "worse off … than he or she would have been" in the absence of deception. *Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*, 445 Mass. 790, 800-801 (2006). Here, Plaintiffs would have faced the same total price if fees were disclosed at the outset, and the failure to disclose fees upfront did not make Plaintiffs worse off. The difference between the initial quote and the final price is not a loss—it is the fee itself, which was disclosed and consented to before purchase.

18

For these reasons, the Complaint suffers the same defect as that in *Shaulis*—"it merges the alleged deception with the injury." 865 F.3d at 11. And even if they "may have been deceived" for an instant in the process, that "does not establish a cognizable injury without some proof of a distinct harm." *Pershouse*, 368 F. Supp. 3d at 191. Plaintiffs got what they paid for—the tickets they picked at the price disclosed before any money changed hands. Compl. ¶¶ 74-75;[5] *see Shaulis*, 865 F.3d at 12. (complaint "does not state a legally cognizable economic injury under Chapter 93A because it fails to identify anything objective that Shaulis bargained for that she did not, in fact, receive."); *see also Presti*, 2018 WL 792035, at *3. The same is true under Rhode Island law. *See Laccinole*, 2014 WL 2440400, at *12.

### III.    FENWAY SPORTS GROUP HOLDINGS SHOULD BE DISMISSED.

Other than naming it as a party and alleging that it is the Red Sox parent company, Plaintiffs allege misconduct by Fenway Sports Group Holdings LLC, a separate entity with no direct relation to the Red Sox business. The Complaint fails to state a claim against FSGH and it should be dismissed.

### CONCLUSION

For the foregoing reasons, the Red Sox respectfully requests the court grant the Red Sox's motion to compel Plaintiffs to arbitrate this dispute, or, in the alternative, to dismiss the complaint in its entirety, or to dismiss FSGH as a party.

---

[5] Plaintiffs suggest that there are three steps to selecting tickets. Customers move from only one page where the available tickets are displayed to another where the complete purchase price appears. Compl. ¶¶ 74-75 While the Complaint vaguely complains about time-limits, the images provided by Plaintiffs confirm that a consumer has a full five minutes to enter their credit card information and peruse the Terms of Use (if they choose to) before finalizing a purchase. Compl. ¶75. And even if the full time allotted expires, Plaintiffs can still return and purchase tickets.

19

Dated:  April 13, 2026

Respectfully submitted,

/s/Christopher M. Morrison
Christopher M. Morrison, Esq. (BBO # 651335)
Michael T. Marcucci, Esq. (BBO #699045)
Lauren Murtagh, Esq. (BBO #713478)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110-1781
Telephone: 617.449.6895
cmorrison@jonesday.com
mmarcucci@jonesday.com
lmurtagh@jonesday.com

*Attorneys for Defendants Boston Red Sox Baseball Club, L.P. and Fenway Sports Group Holdings, LCC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026 the foregoing was filed through the Court's CM/ECF system and will be sent electronically to the registered participants.

/s/ Christopher M. Morrison
Christopher M. Morrison

20